LANNIN *v.* LYNN.

EQUITY — ACCOUNTING — ADEQUATE REMEDY AT LAW—DEMURRER—PARTNERSHIP—FRAUD—CONSPIRACY.

Averments of complainant's bill that he and one of the defendants, as partners, were engaged in the contracting business in the conduct of which they agreed to construct a building for the other defendant at a certain percentage of the cost and that the owner and defendant partner conspired together to defraud complainant by secretly changing the agreement so as to provide for a weekly compensation instead of a percentage of the entire cost; that the defendant partner also received large sums of money for which he did not account to complainant, were insufficient to sustain the jurisdiction of a court of equity and on demurrer the trial court should have held that

complainant had an adequate remedy at law. MOORE, J., dissenting.

Appeal from Wayne; Murphy, J. Submitted October 15, 1914. (Docket No. 104.) Decided March 17, 1915.

Bill by William B. Lannin against William G. Lynn and Sarah F. Cochrane for conspiracy to defraud and for an accounting. From an order overruling a demurrer to the bill of complaint, defendants appeal. Reversed.

*Cornelius & Ring*, for complainant.

*A. J. Groesbeck*, for defendant Cochrane.

*A. W. Semplines*, for defendant Lynn.

MOORE, J. (*dissenting*). This is an appeal from the circuit court in chancery from an order overruling demurrers.

The substance of the bill of complaint is that complainant and defendant were building contractors in the city of Detroit, and that they entered into a contract with defendant Cochrane to perform the usual duties of general contractors in the building of a residence for her, which was to cost in the neighborhood of $25,000, for which services Lannin and Lynn were to receive 15 per cent. of what the residence cost, and that the services were rendered, and the percentage earned. It is averred with more detail than we shall state here that the two defendants became very intimate friends, and that this culminated in a conspiracy to defraud complainant.

We quote from the bill of complaint:

"That some time early in the spring of 1911, while said work was in progress, the said William G. Lynn and Sarah F. Cochrane, unknown to your orator at that time, conceived a plan to defraud your orator out of his just compensation arising from said contract;

and in furtherance of said plan and conspiracy, the said Sarah F. Cochrane entered into an agreement with the said William G. Lynn, whereby he, the said William G. Lynn, for and on behalf of the firm of Lannin & Lynn, agreed to accept the sum of $25 per week in full settlement and compensation for the services which would accrue to the said firm of Lannin & Lynn by reason of superintending the construction of said residence; that after said contract had been entered into by and between the said Sarah F. Cochrane and the said William G. Lynn on behalf of the firm of Lannin & Lynn, said defendant Sarah F. Cochrane began paying the firm of Lannin & Lynn the sum of $25 pursuant to such secret arrangement. * * * That the said William G. Lynn, in furtherance of said plan to defraud your orator, explained to your orator that the reason the said Sarah F. Cochrane was paying said sum was because she was somewhat short of funds at the time and would pay the balance when the building had been completed. * * *

"That pursuant to such secret agreement between the said Sarah F. Cochrane and the said William G. Lynn, codefendants, the said Sarah F. Cochrane paid to the firm of Lannin & Lynn the sum of $25 per week until the sum of $325 had been thus paid; that she then ceased paying anything on account of such services, and has not to this day paid to your orator or to the firm of Lannin & Lynn any further sum on account of such services.

"That the said Sarah F. Cochrane and William G. Lynn now stand ready to go upon the stand in a suit at law and testify that such agreement was made by and between the said William G. Lynn, on behalf of the firm of Lannin & Lynn, in full settlement for the services of such firm on account of the construction of said residence as hereinbefore set out. * * *

"By reason and because of the advantages which accrued to Sarah F. Cochrane from said secret agreement, large sums of money were paid by the said Sarah F. Cochrane to the said William G. Lynn which should have been applied to the account of Lannin & Lynn. * * *

"That since said work has been completed for the said defendant Sarah F. Cochrane your orator and

the said William G. Lynn have dissolved the copartnership which formerly existed under the firm name of Lannin & Lynn, and that upon the dissolution of said partnership a general accounting was had by and between your orator and the said William G. Lynn; that at the time of such general accounting your orator was not cognizant of the fact herein alleged with reference to said secret agreement or contract, and that such transaction was not considered in the settlement by and between your orator and the said William G. Lynn; * * * and by reason of said unlawful conspiracy to defraud your orator as hereinbefore set out the said William G. Lynn refuses to join as a party plaintiff in an action to enforce the collection of such claim and disclaims any and all interest in such a claim, and is therefore made a party defendant herein.

"That there is justly due your orator for such services the sum of $2,544.50. * * *

"That the said William G. Lynn is not possessed of any assets subject to execution and is totally insolvent."

The bill prays for an answer under oath.

"That the contract made by and between the said Sarah F. Cochrane and William G. Lynn, for and on behalf of the firm of Lannin & Lynn, whereby the said William G. Lynn, for and on behalf of the said firm, agreed to settle in full for the services of such firm in connection with such residence for the payment of $25 per week be rescinded, and annulled and canceled.

"That the said defendant Sarah F. Cochrane be required to pay to your orator the sum of $2,219.50 together with interest thereon from the 1st day of October, 1911, less payments made to William G. Lynn on account."

It also prays for an accounting, for discovery, and concludes with a prayer for general relief.

The ground of demurrer most strongly urged is that complainant has an adequate remedy at law, counsel citing, as controlling, *Mack* v. *Village of Frankfort*, 123 Mich. 421 (82 N. W. 209); *Detroit*

*Trust Co.* v. *Bank,* 155 Mich. 61 (118 N. W. 729), and
*Laubengayer* v. *Rohde,* 167 Mich. 605 (133 N. W.
535). Without stopping to analyze these cases we
think a reference to them will show they are dis-
tinguishable from the instant case.

The language of Justice GRANT in *Fred Macey Co.*
v. *Macey,* 143 Mich. 138 (106 N. W. 722, 5 L. R. A.
(N. S.) 1036), is pertinent here:

"Courts of law are not clothed with the sole power
to try issues of fact. The jurisdiction of the court of
chancery in this State to try cases and grant relief
from the consequences of fraud is as old as the juris-
prudence of the State. In the early case of *Wheeler*
v. *Clinton Canal Bank,* Har. Ch. (Mich.) 449, the court,
after holding that the complainant's remedy at law
was difficult and doubtful, said: 'Courts of chancery
have also concurrent jurisdiction in cases of fraud.'
See, also, *Wales* v. *Newbould,* 9 Mich. 45. The same
principle runs through many cases from that time to
the late case of *Edwards* v. *Investment Co.,* 132 Mich.
1 [92 N. W. 491], in which many authorities are cited.

"Counsel recognize that this case is ruled by *John
Hancock Mut. Life Ins. Co.* v. *Dick,* 114 Mich. 337 [72
N. W. 179] 43 L. R. A. 566, and *Mactavish* v. *Kent
Circuit Judge,* 122 Mich. 242 [80 N. W. 1086], and
therefore argue strenuously for the overruling of
those cases. They insist that they are overruled by
the later case of *Northwestern Mut. Life Ins. Co.* v.
*Amos,* 136 Mich. 210 [98 N. W. 1018], and that the
writer of that opinion failed to distinguish it from
those cases. We may have failed in distinguishing
them, but we were evidently of the opinion that we
did distinguish them. At all events it is manifest that
there was no intention to overrule the former cases,
but, on the other hand, to approve them. Our atten-
tion is called to no case in which we have cast any
doubt upon the correctness of those decisions.

"The concurrent jurisdiction of courts of equity
and of law where relief from fraud is asked is too
firmly established in the jurisprudence of this State to
be now overruled."

See, also, *Sherman* v. *Stove Co.,* 85 Mich. 169 (48

N. W. 537); *Warren* v. *Holbrook,* 95 Mich. 189 (54 N. W. 712, 35 Am. St. Rep. 554); *Edwards* v. *Investment Co.,* 132 Mich. 1. (92 N. W. 491); *Freeman* v. *Specialty Co.,* 174 Mich. 59 (140 N. W. 572); *Excelsior Wrapper Co.* v. *Yund,* 176 Mich. 372 (142 N. W. 353).

The decree of the court below should be affirmed with costs.

KUHN, J. I am of the opinion that the demurrer in this case should have been sustained on the ground that the complainant has an adequate remedy at law, and I think it comes within the holding of this court in the case of *Laubengayer* v. *Rohde,* 167 Mich. 605 (133 N. W. 535), and the cases therein cited. See, also, *Reis* v. *Applebaum,* 182 Mich. 582 (148 N. W. 696); *Berger* v. *Roe,* 179 Mich. 184 (146 N. W. 200); *Levitan* v. *Bank,* 182 Mich. 30 (148 N. W. 388).

BROOKE, C. J., and MCALVAY, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred with KUHN, J.